UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| LASHAUNNA BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 12-345-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BOSCH REXROTH CORPORATION, | ) | **MEMORANDUM OPINION** |
| et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendants Bosch Rexroth Corporation ("Bosch"), Dan Reynolds, Geoff O'Nan, and Valenda Allen's motion for summary judgment. [Record No. 49]  For the reasons set forth below, the motion will be granted in its entirety.

**I.**

Plaintiff LaShaunna Banks worked as an assembler for Defendant Bosch for approximately eight years.  [Record No. 20, p. 2 ¶ 5]  Defendant Allen was a human resources generalist for Bosch and was responsible for the calculation, classification, and notification of Banks' FMLA hours.  [Record No. 55-1, p. 2]  Defendant Reynolds was a human resources manager responsible for Banks' FMLA time.  Reynolds also supervised Banks.  [*Id*., p. 2-3] Defendant O'Nan was a production manager at Bosch and Banks' direct supervisor.  [*Id*., p. 3] Banks alleges that she suffers from disabling migraine headaches that caused her to be absent from her work station and occasionally to leave work entirely.  [Record No. 20, p. 2 ¶ 7] Banks'

treating physician, Dr. Burns, provided a letter to Bosch that notified the company of Banks' condition. The letter indicated that exposure to two chemicals present at Banks' place of employment (accrolube and toluene) exacerbated her condition. [Record No. 49-3] Dr. Burns' letter further indicated that when Banks' condition is exacerbated, she should take medication and a break for 15-30 minutes. If the medication did not improve her condition, Dr. Burns recommended that she leave work. [*Id.*]

Banks was granted intermittent leave under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, due to the above-described condition. [Record No 20, p. 3 ¶ 10] However, she alleges that the defendants denied and/or impeded access to her worksite, refused to accommodate her disability, and discriminated against her because of her disability. [*Id.* ¶ 11] Banks complained to various entities, including the Equal Employment Opportunity Commission ("EEOC") and the Lexington-Fayette Urban County Human Rights Commission about her employer's behavior and calculation of her FMLA hours. [*Id.* ¶ 12; Record No. 27, p. 4]

The circumstances regarding Banks' exit from Bosch are disputed. On July 10, 2012, Banks had her employee identification card taken. Thereafter, she left the company. [Record No 20, p. 3 ¶ 13; Record No, 51-14, p. 17] Banks claims that she was terminated on that date, while the defendants argue that she was placed on paid suspension. [Record No. 49-1, p. 6] Bosch claims that, after what it perceived to be Banks' failure to attend independent medical examinations ("IMEs"), it terminated her on August 3, 2012. [*Id.*] Banks alleges that she was on approved FMLA leave when the terminated occurred. [Record No. 30, p. 3 ¶¶ 14, 15]

Banks' Amended Complaint alleges: (i) FMLA interference under 29 U.S.C. § 2615(a)(1); (ii) FMLA retaliation under 29 U.S.C. § 2615(a)(2); (iii) disability discrimination in violation of the Kentucky Civil Rights Act ("KCRA") under KRS § 344.040; (iv) failure to accommodate in violation of the KCRA under KRS § 344.040; (v) unlawful retaliation in violation of the KCRA under KRS § 344.0280; (vi) negligence, negligent hiring, negligent training, negligent supervision, and negligent retention; (vii) punitive damages; and (viii) outrage and intentional infliction of emotional distress ("IIED"). [Record No. 20, pp. 3-8] The Court dismissed the KCRA claims of discrimination and failure to accommodate against the individual Defendants and the negligence, IIED, and punitive damages claims in their entirety. [Record No. 53] Additionally, Banks was directed to file a more definite statement regarding the remaining claims. [Record No. 55-1] The defendants supplemented their motion for summary judgment [Record No. 58] in response to Banks' more definite statement [Record No. 55-1].

## II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The party moving for summary judgment bears the burden of showing that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). However, once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Instead, the nonmoving party must present "significant probative evidence" of a genuine dispute . . . to defeat the motion for summary judgment. *Chao*, 285 F.3d at 424. The nonmoving party cannot simply rely upon the assertions in its pleadings. It must come forward with probative evidence, such as sworn affidavits, to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

## III.

### A.  KCRA Disability Discrimination and Failure to Accommodate Claims

#### i.  Reasonable Accommodation

The defendants contend that Bosch is entitled to summary judgment on the KCRA discrimination and failure to accommodate claims as banks was not a "qualified individual" under the Americans with Disabilities Act ("ADA"). [Record No. 49-1, p. 10] Because the language of the KCRA parallels the requirements of the ADA, courts commonly use the ADA to interpret the KCRA. *See Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007). Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual on the

basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discriminating "on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). It is considered discrimination where a covered entity "den[ies] employment opportunities to a[n] . . . employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(B). "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8)

Disability discrimination and failure to accommodate claims can be asserted under either direct or indirect evidence theories. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173 (6th Cir. 1996). "[I]f the plaintiff has direct evidence that the employer relied on his or her disability in making an adverse employment decision, or if the employer admits reliance on the handicap," the case should be analyzed under a theory of direct evidence. *Id.* Because the defendants argue that Banks was not a qualified individual, the direct evidence standard will apply. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868-69 (6th Cir. 2007).

When a claim is based on direct evidence, the claim is analyzed under the following framework:

(1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is "otherwise qualified" for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged "essential" job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

*Id.* at 869 (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004)).

Under this framework, the plaintiff has the burden of requesting an accommodation that: (1) is objectively reasonable and (2) will allow her to perform the essential functions of her job. *Monette*, 90 F.3d at 1183-84 ("[T]he disabled individual bears the initial burden of proposing an accommodation and showing that *that* accommodation is objectively reasonable . . . [and] that he or she is capable of performing the essential functions of the job with the proposed accommodation.") (emphasis in original). The Sixth Circuit has held that "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998).

In the present case, the defendants argue that Banks was not able to perform the essential elements of her job because she could not meet the attendance requirements. They claim that Banks could not work around chemicals that exacerbated her migraine condition. [Record No. 49-1, pp. 11-12] Because exposure was an unavoidable part of her job, they assert that she could not avoid absences and, therefore, was not qualified. *Id.* However, Banks responds that Dr. Burns' letter did not require that she be given her an unfettered right to leave work and did not impose a restriction which prohibited exposure to these chemicals. [Record No. 51, pp. 8-9]

Dr. Burns' letter stated that Banks "should avoid exposure to accrolube and toluene." [Record No. 49-3]  While Banks claims that Dr. Burns' letter merely instructed her to take occasional 15-30 minute breaks, the letter clearly stated that she should be allowed to leave her worksite when medication did not resolve her condition.  [*Id.*]  Therefore, the letter gave Banks the ability to be absent from work whenever she felt that her medication was not effective.  An unlimited ability to leave work is not reasonable.  *Buckles v. First Data Res., Inc.*, 176 F.3d 1098, 1101 (8th Cir. 1999) (opining that an unfettered ability to leave work at any time is not reasonable); *see also Gantt*, 143 F.3d at 1047.  Because attendance is an essential aspect of the job, there is no issue of fact that this accommodation was unreasonable.

Banks contends that there were locations at Bosch that did not contain the aggravating chemicals, specifically the label room and certain work lines.  However, Banks does not offer any further evidence about a possible position limited solely to the label room or those lines. There has been no proof offered that a position would have been available would not require transferring another employee, that Banks was qualified by experience or training for any hypothetical position, or that any position would actually and totally prevent exposure to the triggering chemicals.  Without proof regarding these issues, the mere existence of a room or work lines at Bosch that did not contain the offending chemicals cannot be said to be an objectively reasonable accommodation.  *See Monette*, 90 F.3d at 1183-84 (Plaintiff has the burden of showing that an accommodation is reasonable).  Therefore, Banks has not demonstrated that she offered a reasonable accommodation as required for these KCRA claims.

However, employers and employees must also engage in the interactive process to possibly identify a reasonable accommodation. *Kleiber.*, 485 F.3d at 871.

### ii. Interactive Process

The defendants also argue that Banks failed to interact with them to help identify a reasonable accommodation which is required under the ADA. *Id.* Bosch claims that it scheduled two IMEs (on July 16, 2012 and August 2, 2012) to engage in the interactive process. [Record No. 49-1, p. 6] Banks asserts that she attempted to engage in the interactive process by providing the note from Dr. Burns. [Record No. 51, p. 8] But as discussed above, this note did not request an accommodation that was reasonable. Banks argues that the IMEs were for an improper purpose, were not part of the interactive process since she was terminated prior to their allegedly scheduled date, and were never actually scheduled. [Record No. 51, pp. 11-14]

Claims for disability discrimination and failure to accommodate require both parties to engage in the interactive process. *Brown v. Humana Ins. Co.*, 942 F. Supp. 2d 723, 732-33 (W.D. Ky. 2013). The ADA's regulations indicate that, "[t]o determine the appropriate reasonable accommodation [for an employee,] it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]." 29 C.F.R. § 1630.2(o)(3). This process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.* Accordingly, "[t]he interactive process requires communication and good-faith exploration of possible accommodations." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000) (en banc). According to the Sixth Circuit, this process is mandatory, and both parties must participate in good faith. *Kleiber.*, 485

F.3d at 871. When a party impedes the process or does not participate in good faith, "courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1285 (7th Cir. 1996) (quotation omitted). An employer satisfies the good faith requirement when it readily meets with the employee, discusses reasonable accommodations, and suggests other possible positions. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 203 (6th Cir. 2010). The employee will not be considered a qualified individual if she rejects an offered accommodation. *Hedrick*, 355 F.3d at 457.

Banks claims that the IMEs were for the improper purpose of determining whether she was actually disabled. [Record No. 51, pp. 13-14] She asserts that an e-mail sent by Defendant Allen stated that the purpose of the IMEs was to see if , in fact, she had a disability. *Id.* While Defendant Allen's e-mail did state that one purpose of the IME was to determine if Banks actually suffered from a disability, it went on to state that the IMEs would also be used to discover if Banks could actually work in the facility because the triggering chemicals were used almost everywhere. [Record No. 51-31] Further, a separate e-mail from Allen stated that the main goal of the IME was to see if they could accommodate Banks' disability. [Record No. 51-23] While the ADA generally prohibits medical exams to determine the existence of a disability or its severity, there is an exception when it is consistent with business necessity. *Donofrio v. New York Times*, 99-CV-1576-RCCJCF, 2001 WL 1663314, at *8 (S.D.N.Y. Aug. 24, 2001). And an IME is consistent with business necessity when the employee requests an accommodation or when the employee's ability to perform an essential function of the job is impaired. *Denman v. Davey Tree Expert Co.*, 266 F. App'x 377, 379 (6th Cir. 2007). If the

employee's health issues present a "substantial and injurious" effect on job performance, an IME may be required even if it may determine whether the employee is actually disabled or the severity of that disability. *Donofrio*, 2001 WL 1663314 at *8. Banks provided Dr. Burns' letter as a request for an accommodation. As discussed above, Banks' absences impaired her ability to perform an essential function of her job. She was often absent and this caused Bosch to shift production to make-up for her poor attendance. [Record No. 49-8, pp. 47-48] Thus, Bosch was permitted to ask Banks to submit to an IME, even though it may have revealed whether she was disabled and the extent of that disability as it was consistent with a business necessity.

Banks also argues that Bosch was not permitted to require an IME because there is no case law identifying that the KCRA allows employers to schedule an IME. [Record No. 51, p. 12] However, claims brought under the KCRA are construed consistently with the standards of the ADA. *Bryson*, 498 F.3d at 574. Since the KCRA was modeled after federal law, Kentucky courts interpret the KCRA in light of federal precedent. *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003). IMEs have been held to be a valid part of the interactive process under the ADA. *Denman*, 266 F. App'x at 379. While requesting an IME has not been raised, Kentucky courts have reviewed cases in which an IME was a part of the interactive process and did not find it to be improper. *See generally Primm v. Isaac*, 127 S.W.3d 630, 632 (Ky. 2004). With no prohibition on IMEs in relevant case law, the Court finds that scheduling an IME was an appropriate means of engaging in the interactive process under the KCRA.

Banks claims that she did not attempt to attend either of the IMEs because she believed she was terminated on July 10, 2012. She argues that the IMEs could not have been a part of the

interactive process because they occurred after she was fired.  [Record No. 51, p. 6]  However, such an assertion is not supported by the record.  Defendant Reynolds sent Banks three letters (July 11, 2012, July 23, 2012, and July 31, 2012) which expressly stated that Banks was not terminated but placed on paid suspension.  [Record Nos. 49-14, 49-15, 49-16]  Maria Noel, Banks' union representative who attended the July 10 meeting, similarly thought she was terminated, but admits that she never heard the word termination.  [Record No. 51-19, p. 17]  Additionally, Noel did not have access to Reynold's letters which stated that Banks was on paid suspension.

While there is a dispute regarding whether it was common practice at Bosch to take an employee's identification card, resolution of that issue is not necessary under the facts presented.  Even if Banks believed she was terminated on July 10, 2012, she had an explicit statement from Reynolds the next day – before any scheduled IME – indicating that she was on paid suspension.  Further, Banks admits that she was informed that she would be paid through the suspension period.  [Record No. 49-3, p. 153]  Banks attempts to argue that while she was paid, the unusual nature of the payment means she was actually terminated.  [Record No. 51, pp. 11-12]  While the method of payment during Banks' suspension may not have been common practice, it does not suggest that she was fired rather than put on paid suspension.  Thus, Banks' belief that she was terminated on July 10, 2012, was not reasonable in light of her payment and the letters from Reynolds.

The parties dispute whether the first IME was actually scheduled.  And the record indicates that Bosch had a difficult time getting the first IME scheduled, even though the

defendants indicated to Banks that the IME had been scheduled on July 16, 2012. [Record Nos. 49-22, 51-21] However, Banks does not dispute that the second IME was scheduled for August 2, 2012. Regardless, Banks did not appear or make an attempt to attend either IME. Banks argues that, because the first IME may not have been scheduled, she was relieved from participating in the interactive process even though the second IME was scheduled. While Bosch had difficulty scheduling the first IME and communicating this difficulty to Banks, it did make an attempt to engage in the interactive process by scheduling the second IME. Additionally, Steve Hargis, one of Banks' supervisors, attempted to meet with Banks and discuss any discrepancies between Bosch's calculation of her FMLA time and her attendance. Banks refused to meet with him, stating that it was a waste of time and not proper protocol. [Record No. 49-1, pp. 114-26]

In short, the record does not contain any suggestion that Banks tried to engage in the interactive process in good faith. Beyond the mere production of Dr. Burns' letter, Banks did not make any attempt to help identify a reasonable accommodation. Conversely, Bosch attempted to get Banks to attend an IME for the purpose of identifying a reasonable accommodation and, therefore, attempted to take part in the interactive process. This is not a case where the employer failed to accommodate an employee by failing to engage in an interactive process. *See Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996) ("[C]ourts should attempt to isolate the cause of the breakdown and then assign responsibility."). Because Banks was not a qualified individual under the KCRA and failed to engage in the

interactive process, summary judgment will be granted in the defendants' favor regarding her claims of KCRA disability discrimination and failure to accommodate.

### B.    KCRA Retaliation

Banks also alleges that Bosch, Allen, Reynolds, and O'Nan retaliated against her for reporting that she was subject to discrimination. [Record No. 55, p. 10] However, the defendants argue that Banks cannot establish a *prima facie* case for retaliation, that their employment decisions were legitimate and non-retaliatory, and there is no evidence of pretext. [Record No. 49-1, pp. 21-24] It is undisputed that Banks made several reports to the EEOC, Lexington-Fayette Human Rights Commission, and her union concerning the defendants' allegedly wrongful behavior.  [Record No. 51, p. 21]  She argues that, after reporting the alleged discriminatory activity, the defendants retaliated against her by terminating her employment. [Record No. 55-1, pp. 11-12] Banks also argues that the individual Defendants retaliated against her by failing to provide a reasonable accommodation.  [Record No. 59, pp. 5-7]  However, as discussed above, the letter from Dr. Burns does not constitute a reasonable request for an accommodation.  And the individual Defendants cannot be liable for KCRA retaliation by failing to provide an unreasonable accommodation.

A plaintiff may attempt to prove unlawful retaliation by direct evidence or by showing a *prima facie* case under the burden-shifting analysis described in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801-05 (1973).  Direct evidence is such that, if true, requires the conclusion that unlawful retaliation was a motivating factor without any inferences or presumptions.  *Norbuta v. Loctite Corp.*, 181 F.3d 102 (6th Cir. 1999).  Banks' claim requires

the inference that her complaints were causally connected to the defendants' retaliation due to their temporal proximity. [Record No. 51, p. 22] Therefore, Banks' claim relies on indirect evidence and she must establish a *prima facie* case for retaliation under the KCRA.

To establish a *prima facie* case for retaliation, Banks has the initial burden to show that: "'(1) [s]he . . . engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action.'" *Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 435 (6th Cir. 2009) (quoting *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). The burden of establishing a *prima facie* case has been described by the Sixth Circuit as "not onerous." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Once a *prima facie* case has been made, the burden shifts to the employer who must demonstrate that there was legitimate, nondiscriminatory reason for its action. *Hamilton*, 556 F.3d at 435. If that burden is satisfied, Banks then bears the burden of showing that the legitimate reason is pretextual. *Id.*

The defendants dispute that there is a causal connection between the protected activity and the adverse action. [Record No. 49-1, p. 21] They argue that Banks received paid leave and sufficient opportunity to go to the IME to help identify an accommodation that would possibly improve her attendance. However, because Banks did not take advantage of these opportunities, they claim that she essentially terminated herself, removing any doubt concerning a causal connection between the protected activity and the adverse employment action. Banks argues that the temporal proximity of the exercise of her protected rights and the adverse employment action

is sufficient to satisfy the causal connection requirement of a *prima facie* case. [Record No. 51, p. 22]

To establish a causal connection, the plaintiff must show evidence that would raise the inference that the protected activity was likely the reason for the adverse employment action. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007) (citations omitted). "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Banks' last complaint was filed on July 6, 2012, and she was suspended on July 10, 2012. [Record No. 51, p. 22] When the time period between the protected activity and the adverse employment action is less than two months, it is sufficient to satisfy the causal element. *Asmo v. Keane, Inc.*, 471 F.3d 588, 594 (6th Cir. 2006). Here, the temporal proximity is sufficient to establish the causal connection. Thus, under the *McDonnell Douglas* framework, the burden shifts to the defendants to demonstrate a legitimate reason for their actions. *Mickey*, 516 F.3d at 526 (6th Cir. 2008).

The burden of providing a legitimate, nondiscriminatory reason is not high. *Ford v. Securitas Sec. Servs. USA, Inc.*, 338 F. App'x 483, 489 (6th Cir. 2009). "The defendant bears only the burden of production; the burden of persuasion is with the plaintiff at all times." *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 377 (6th Cir. 2002); *see also Chappell v. GTE Prods. Corp.*, 803 F.2d 261, 266 (6th Cir. 1986) (A "defendant need not persuade the [trier of fact] that it was actually motivated by the proffered reasons, but need only produce admissible evidence

which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." (internal quotations and citations omitted)). The defendants argue that they allowed Banks to take her full allotment of FMLA leave (an additional 3.5 weeks of leave) and tried to accommodate her disability by putting her on paid suspension while she attended the IMEs. [Record No. 49-1, pp. 22-23] The defendants claim that because Banks did not attend these IMEs, she was terminated. [*Id*.] Thus, the defendants have provided a legitimate reason for termination.

Once an employer provides a legitimate, nondiscriminatory reason for its actions, the employee must show that the stated reason "is merely a pretext for discrimination." *Weigel*, 302 F.3d, at 378. A plaintiff can show pretext by demonstrating that the proffered reasons: (1) had no basis in fact, (2) "did not actually motivate the company's decision" or (3) were insufficient to support defendants' actions. *Cline v. BWXT Y–12, LLC*, 521 F.3d 507, 509 (6th Cir. 2008). To show that the proposed reason was merely pretext, the plaintiff must provide more than mere speculation. *Hagan v. Warner/Elektra/Atl. Corp.*, 92 F. App'x 264, 268 (6th Cir. 2004). The Sixth Circuit has indicated that the plaintiff must introduce more than doubt to satisfy this burden:

> [The plaintff has] the burden of persuasion on this point. This burden is not satisfied by introducing "metaphysical doubt" as to the intent of the decision-maker or the adequacy of the process. [Plaintiff] was required to bring forward evidence tending to show that retaliatory animus was the but-for cause of h[er] termination. [Her] subjective belief that [defendant's] proffered reason is false, and that retaliation was the actual motive, is not sufficient to withstand summary judgment.

*Carson v. Ford Motor Co.*, 413 F. App'x 820, 824 (6th Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586).

Banks argues that there is "substantial evidence" demonstrating that the defendants' reasons for termination were pretextual. First, she claims that she called work on July 9, 2012, to notify Bosch that she would be absent and intended use her leave, contrary to the assertions of Bosch. Second, she asserts that there were numerous and common miscalculations of her leave time. Finally, Banks argues that she was not on the discharge step of Bosch's progressive discipline system. [Record No. 51, p. 16] Banks claims that these facts show that her termination was in retaliation for the complaints she made, rather than for her frequent absenteeism, tardiness, and failure to attend the IMEs.

The assertion that Banks may have actually called on July 9, 2012, does not sufficiently demonstrate pretext. The defendants state that the reason for Banks' termination was a combination of excessive and chronic absenteeism, tardiness, and her failure to attend any IME. The mere fact that she may have called on July 9, does not show that the basis of termination was not based in fact, did not actually motivate Bosch's decision, or was insufficient to support their actions. Further, the defendants claim that Banks' tardiness on July 10, 2012, did bring her to termination level. Banks does not dispute this assertion. [Record No. 49-1, p. 24]

Banks' claim that the defendants committed a pattern of error in the calculation of her leave and absences is similarly unavailing. Without evidence specifically connecting this pattern to the decision to terminate Banks, there cannot be more than a "metaphysical doubt" that this invalidates the defendants' reasons for termination. A pattern of miscalculation is insufficient

to demonstrate that a retaliatory motive was the but-for cause of the termination. And here, this argument does not offer more than "mere speculation" which is insufficient to demonstrate pretext. *Hagan*, 92 F. App'x at 268.

Finally, Banks argues that she was not eligible for termination under Bosch's progressive discipline program. If true, this would demonstrate that the excessive absences reason for termination was not insufficient, thus demonstrating the retaliatory intent behind her termination. The defendants claim that this assertion is incorrect and contend that Banks was late for work on July 10, 2012, putting her at termination level for tardiness. They also argue the defendants' honest belief that the decision to terminate Banks due to her absenteeism prevents her from establishing that the reasons were pretextual. [Record No. 49-1, p. 24]

As long as an employer has an honest belief that its reason for termination is legitimate, the employee cannot maintain that it was pretextual simply because it was wrong. *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998). This rule allows a defendant to show that while its action was mistaken, it was not taken with discriminatory intent. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 714 (6th Cir. 2007). "In other words, arguing about the accuracy of the employer's assessment is a distraction because the question is not whether the employer's reasons for a decision are right but whether the employer's description of its reasons is honest." *Smith*, 155 F.3d at 806 (quoting *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997) (internal quotations omitted)). A plaintiff must demonstrate more than a dispute over the facts concerning the basis for the discharge. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 492-93 (6th Cir.

2001)).  Thus, an employee will not be able to prove pretext even if the belief was "mistaken, foolish, trivial, or baseless."  *Smith*, 155 F.3d at 806.  For the honest belief rule to apply, the belief must have been based on particularized facts.  *Id*. at 807.  This does not require the decision-making process to be optimal.  The key inquiry is whether the employer's decision was reasonably informed and considered before taking the adverse employment action.  *Id*.

Banks claims that the honest belief rule does not apply because of the defendants' "sloppy recording practices and miscalculations."  [Record No. 51, p. 20]  However, she has failed to rebut the sworn testimony of David Deremer and Pat Haran, the Vice Presidents of Human Resources at Bosch and Robert Bosch, LLC, respectively, both of whom made the decision to terminate Banks.  [Record Nos. 49-19, 49-20]  They state that they both believed that Banks had exhausted her FMLA time, vacation time, personal leave, and that all of her absences and tardiness were unexcused as of June 2012.  They state that, rather than immediately terminating Banks after continued absences and tardiness, they put her on paid suspension to attend the IMEs and were unaware of any other employee ever receiving paid suspension for the purpose of attending an IME.  [*Id*.]

After Banks did not attend either of the IMEs, Deremer and Haran state that the decision was reached to terminate her employment.  This decision was reached only after they believed that Banks had reached termination level for both absences and tardiness and then failed to attend the IMEs.  The statements of Deremer and Haran demonstrate a "reasonably informed and considered decision," before the adverse employment action.  *Smith*, 155 F.3d at 807.  Further, the defendants did not believe they terminated Banks when they claim she had reached

termination level for absences.  Instead, they put her on a paid suspension and attempted to get her to attend IMEs.  After Banks' failure to attend the IMEs, Deremer and Haran made the decision to terminate her employment.

The combination of excessive absenteeism, tardiness, and Banks' failure to attend the IMEs, informed the decision to terminate her employment.  While the defendants may have been mistaken about the actual level of absences, this claimed mistake does not make the cause for termination pretextual.  Moreover, plaintiff has not addressed the defendants' argument concerning Banks reaching the termination level for tardiness on July 10, 2012.  [Record No. 49-1, p. 24]  While Banks argues that she may not have been at termination level for absences on July 10, 2012, she does not dispute that she was at termination level for tardiness.  Therefore, the defendants have presented a reason for termination that Banks does not attempt to classify as pretextual.  Banks has failed to demonstrate that the proffered reasons for termination were mere pretext.

### C.    FMLA Interference

The defendants argue that Banks was never denied protected leave to which she was entitled and that banks was not prejudiced by any mischaracterization of leave as FMLA leave. [Record No. 49-1, pp. 24-29]  Banks claims that she had 186.93 FMLA hours remaining when she was terminated.  [Record No 51, p. 18]  "To prevail on the [interference] theory claim . . . , an employee must prove that: (1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the

employee FMLA benefits to which she was entitled." *Grace v. USCAR and Bartech Tech. Servs.*, 521 F.3d 655, 669 (6th Cir. 2008) (citing *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006)). In addition to stating a *prima facie* case concerning the five elements, a plaintiff asserting a claim for FMLA interference must also demonstrate that she was prejudiced by the violation of the FMLA. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90-91 (2002) *see also Coker v. McFaul*, 247 F. App'x 609, 619 (6th Cir. 2007) ("[O]ur more recent decisions have acknowledged *Ragsdale* and reinforced the necessity on the part of a plaintiff in an FMLA action to demonstrate prejudice.").

To show that the employer's action caused them prejudice, Banks must demonstrate some harm. *Cavin v. Honda of Amer. Mfg., Inc.*, 346 F.3d 713, 726 (6th Cir. 2003). "The employer is liable only for compensation and benefits lost 'by reason of the violation,' [29] § 2617(a)(1)(A)(i)(I), for other monetary losses sustained 'as a direct result of the violation,' [29] § 2617(a)(1)(A)(i)(II), and for 'appropriate' equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B)." *Ragsdale*, 535 U.S. at 89. Additionally, a reason for dismissal not related to FMLA leave will be insufficient for recovery under an interference theory. *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 961 (10th Cir. 2002).

An employer may lawfully dismiss an employee and prevent that employee from exercising rights under the FMLA if the employer would have terminated the employee regardless of whether they took FMLA leave. *Edgar*, 443 F.3d at 508; *Arban v. W. Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). Further, if the employer would have terminated the employee

if FMLA leave had not been taken, they will not be held liable. *Ballato v. Comcast Corp.*, 676 F.3d 768, 772 (8th Cir. 2012). Here, the defendants do not attempt to argue that they have complied with the notice requirement of the FMLA. Rather, they claim that the lack of harm suffered by Banks as a result of the improper designation of FMLA leave prevents her claim of interference.

Banks claims that Bosch miscalculated her FMLA hours because the company counted several absences as being FMLA leave when they should have been either unexcused absences or vacation days. However, Banks stated that she did not have any remaining vacation days as of May 2012. [Record No. 49-3, p. 92] And while Banks argues that the expert opinion of Dr. Bauries demonstrates that she had 186.93 hours of FMLA leave remaining, that is not dispositive. [Record No. 51, p. 17] Bauries' opinion that Banks had that much leave is based on the fact that several hours were mislabeled as FMLA hours. [*See* Record No. 39-9.] But regardless of how the calculations are made, there was no violation of the FMLA. If the defendants' calculations of FMLA leave are correct, then Banks had exhausted her leave time and her termination after being on paid suspension would not constitute a violation. And if Banks' calculations are correct, she had 186.93 hours remaining due to the defendants' lack of notice that her absences would be classified as FMLA leave. However, if those days had not been classified as FMLA leave, they would have been unexcused absences. Having accumulated several unexcused absences, the defendants' termination of Banks for excessive absenteeism would be "outside the FMLA's reach." *Manns v. ArvinMeritor, Inc.*, 291 F. Supp. 2d 655, 660-61 (N.D. Ohio 2003). Moreover, even if the days were not considered FMLA leave, which

would have caused Banks to accumulate even more unexcused absences, Bosch still did not terminate her. Rather, it attempted to get Banks to attend IMEs, which she failed to do. Banks was terminated only after she failed to engage with the defendants concerning her health issues.

Banks also asserts that O'Nan and Allen are liable for FMLA interference because they caused her to be denied FMLA leave to which she was entitled. [Record No. 55-1, pp. 2-3] However, these specific claims fail for the reasons discussed above. If the defendants had not classified her absences as FMLA leave, Banks would have reached a terminable level of absences. Banks cannot demonstrate any harm from classifying these absences as FMLA leave.

### D.    FMLA Retaliation

The defendants argue that Banks cannot state a *prima facie* case for FMLA retaliation because she cannot demonstrate a causal connection between protected activity and her termination. They also claim that Banks cannot show that their legitimate, non-retaliatory reasons for termination were pretextual. [Record No. 49-1, p. 29-30] Banks argues that the temporal proximity establishes her *prima facie* case for FMLA retaliation. [Record No. 51, pp. 18-19] Banks also asserts that defendants O'Nan and Allen exercised sufficient control over her termination to be liable for FMLA retaliation. [Record No. 59, pp. 4-5]

When a plaintiff argues that temporal proximity demonstrates causation, it is an argument based on indirect evidence. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). Since Banks' claim relies on indirect evidence, the Court applies the *McDonnell Douglas* burden shifting framework to her claims of FMLA retaliation. *Skrjanc*, 272 F.3d at 313-16. To state a claim under this framework, Banks must first set out a *prima facie* case by demonstrating

that "(1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." *Bryson*, 498 F.3d at 570. Additionally, as the FMLA is not a strict liability statute, Banks must demonstrate some form of harm caused by the defendants' alleged violation. *Romans v. Michigan Dep't of Human Servs.*, 668 F.3d 826, 842 (6th Cir. 2012).

The burden to establish a *prima facie* case is minimal. *Dixon*, 481 F.3d at 333. The Sixth Circuit has held that termination two months after an employee engaged in a protected activity is sufficiently proximate to satisfy the causal requirement. *Asmo,* 471 F.3d at 594. Here, Banks requested FMLA leave one day before she was placed on paid suspension. [Record No. 51, p. 19] Thus, the time period is sufficiently proximate to demonstrate the *prima facie* element of a causal connection. The defendants do not dispute the other elements of a *prima facie* case, so Banks has satisfied her burden at this stage.

Because a *prima facie* case has been demonstrated, the burden shifts to the defendants to provide a legitimate, non-retaliatory reason for the adverse action. *Bryson*, 498 F.3d at 571. While Banks claims that the defendants do not dispute this issue, the defendants incorporate their previous arguments concerning KCRA retaliation for Banks' FMLA retaliation claim. [Record No. 49-1, p. 30] And as stated previously, the defendants claim that Banks was terminated for excessive absenteeism, tardiness, and her failure to attend any IMEs. Thus, the burden then shifts to Banks to demonstrate pretext. *Bryson*, 498 F.3d at 571.

Banks' FMLA retaliation claim is substantially similar to her KCRA retaliation claim. She argues that the defendants unlawfully retaliated against her by terminating her employment

due to her exercise of her FMLA rights and filing complaints.  The defendants have provided legitimate, non-retaliatory reasons for Banks' termination, her excessive absenteeism, tardiness, and failure to attend any IME.  As discussed above, Banks has failed to demonstrate that these reasons were pretextual.  Therefore, summary judgment is appropriate regarding this claim.

### E.  Back Pay

The defendants argue that Banks should not be entitled to back pay because her failure to be present for work constitutes a willful loss of earnings.  [Record No. 49-1, pp. 37-39]  Banks claims that back pay is a question for the jury and that summary judgment is not appropriate.  [Record No. 51, pp. 24]  However, back pay is awarded when a violation is found.  *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 626 (6th Cir. 1983).  Because all of Banks' claims will be dismissed, back pay is not be available.

### IV.

Banks' claims for failure to accommodate and disability discrimination under the KCRA fail because she was not a qualified individual and because she did not engage in the interactive process.  Banks' claim of KCRA retaliation fails because the defendants have offered legitimate, nondiscriminatory reasons for termination and Banks has not shown that those reasons were mere pretext.  Similarly, Banks' FMLA retaliation claim fails because the defendants have demonstrated a legitimate reason for termination and because Banks has not demonstrated that the reasons provided were pretextual.  Banks' FMLA interference claim fails because she has not demonstrated sufficient harm in being denied leave.  Accordingly, it is hereby

**ORDERED** as follows:

1.    Defendants Bosch Rexroth Corporation, Dan Reynolds, Geoff O'Nan, and Valenda Allen's motion for summary judgment [Record No. 49]  is **GRANTED**.

2.    The plaintiff's motion in limine [Record No. 47] is **DENIED** as moot.

3.    All claims having been resolved, this action is **DISMISSED** and **STRICKEN** from the Court's docket.

4.    A final and appealable Judgment shall be entered this date.

This 14th day of April, 2014.

Signed By:
*Danny C. Reeves* DCR
**United States District Judge**